[Crim. No. 26149. Second Dist., Div. Five. Aug. 4, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD MYLES, Defendant and Appellant.

## COUNSEL

George Rosenberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Frederick R. Millar, Jr., and William R. Weisman, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ASHBY, J.**—In a jury trial appellant was convicted of receiving stolen property belonging to Marilyn Miranda (Pen. Code, § 496), and of burglary of the residence of Tony Merriweather (Pen. Code, § 459).[1] He appeals from the judgment sentencing him to imprisonment in the state prison.

### FACTS

#### Count II (Miranda)

On August 17, 1973, Marilyn Miranda's apartment at 965 So. Magnolia was burglarized sometime after 1 p.m. Two television sets and stereo equipment were taken. At approximately 4 p.m. that date Officer William Barker of the Los Angeles police observed appellant and another man named Dozier at 4515 So. Vermont in a 1965 Ford, subsequently shown to belong to Dozier. Appellant was the passenger and Dozier was driving. Appellant and Dozier got out of the vehicle and opened the trunk. They looked inside the trunk, along with some other people from a garage at that location. Officer Barker observed two television sets in the trunk. Appellant or Dozier then closed the trunk.[2] Appellant re-entered the vehicle on the passenger side; Dozier re-entered on the driver's side and drove away.

---

[1] A consolidated information containing four counts charged appellant alternatively with burglary and with receiving stolen property as to each victim. The counts on which he was convicted were count II (Miranda) and count III (Merriweather).

[2] Upon cross-examination Officer Barker could not remember whether it was Dozier or appellant who opened or closed the trunk.

Officer Barker stopped the Dozier vehicle at 47th and Vermont. He approached the passenger side of the vehicle and asked appellant his name. Officer Barker examined the televisions in the trunk, then "questioned the defendant and the other party in the vehicle, as to the ownership, brand names, serial numbers of the televisions. . . . They couldn't give me the brand names or ownership of the televisions. They were taken to Southwest Station for further investigation." The televisions were subsequently identified by the victim Miranda.

At trial appellant testified in his own defense as follows: He did not commit the Miranda burglary and he did not know the TV sets in Dozier's car were stolen. Dozier had come by appellant's house earlier that day and tried to sell appellant or his girl friend a TV set, but they did not buy from him. Dozier told them that he had bought the television set from some person. When the police stopped the car and asked appellant if it was his TV, he told them no.

### Count III (Merriweather)

On December 11, 1973, Tony Merriweather's residence at 1645 E. 50th Place was burglarized sometime after 1:30 p.m. Among the items taken were his television set and a gold leather jacket.

At 8:30 p.m. on that date Officer Williams of the Los Angeles Police Department observed appellant walking near 51st Street and Long Beach, a high burglary neighborhood. Appellant was carrying a television set and a light tan jacket under his right arm. Officer Williams and his partner stopped appellant. A pat-down search for weapons revealed a screwdriver, steak knife, and putty knife, commonly used as burglar tools, in appellant's pockets. Appellant turned his head toward the intersection of 51st and Long Beach. There a male Negro with a jacket in one hand and a flight bag in the other looked in the officer's direction and then ran. Officer Williams chased this man but lost him.

Officer Williams asked appellant if the television set belonged to him. Appellant replied that it was not his, and he did not know the brand name. Appellant was asked who owned the television, and he responded with a man's name and indicated the man lived in the 1600 block of East 51st Street. Officer Williams asked appellant if he would direct them to the man's house, and appellant indicated he would. Appellant was placed handcuffed in the police vehicle and they proceeded in that direction. As they approached the location first indicated by appellant,

appellant changed his story and said that the man lived three blocks west from there. As they approached the second location indicated by appellant, he changed his story again and said that the television belonged to Eleanor McDowell who lived in the 1500 block of East 53d. After proceeding to that location and speaking with McDowell, Officer Williams arrested appellant and advised him of his rights. Appellant was asked to whom the jacket belonged; he indicated it was his brother's. However, the size of the jacket was different from the size appellant said his brother wore. Subsequently appellant stated that he had not seen his brother in a year, and that the brother lived in Louisiana.

At trial appellant testified in his own behalf, denying that he committed the Merriweather burglary. He testified that he found the television and the leather coat in a trash barrel near 51st and Morgan. He was taking the steak knife and putty knife which were in his pocket to his girl friend Eleanor McDowell, to scale fish.

CONTENTS

<em>Count II</em>

As to count II, appellant contends that the evidence is insufficient to support the judgment. We have concluded that this contention is correct and that the judgment as to count II must be reversed.

To sustain a conviction of receiving stolen property it must be shown (a) that property was received, concealed or withheld by the accused; (b) that such property had been obtained by theft or extortion; and (c) that the accused knew that the property had been so obtained. (*People* v. *Kunkin,* 9 Cal.3d 245, 249 [107 Cal.Rptr. 184, 507 P.2d 1392, 57 A.L.R.3d 1199].)

Respondent relies upon the well-established principle that the possession of stolen property, accompanied by no explanation or unsatisfactory explanation, or by suspicious circumstances, will justify an inference that the goods were received with knowledge that they had been stolen. Corroboration need only be slight and may be furnished by conduct of the defendant tending to show his guilt. (*People* v. *Lyons,* 50 Cal.2d 245, 258 [324 P.2d 556]; *People* v. *McFarland,* 58 Cal.2d 748, 754 [26 Cal.Rptr. 473, 376 P.2d 449]; *People* v. *Perez,* 40 Cal.App.3d 795, 799 [115 Cal.Rptr. 405].) That principle is inapplicable here, however, because appellant was not shown to be in possession of the television sets in the trunk of Dozier's automobile.

The automobile was owned and driven by Dozier. Appellant was merely a passenger. Officer Barker was unable to state whether it was appellant or Dozier who opened and shut the trunk. Appellant was but one of several persons at the location who were seen looking into the trunk. These facts are insufficient to establish that appellant possessed the stolen television sets. Mere access or proximity to stolen goods is not sufficient to infer possession; dominion and control must be shown. (*People* v. *Martin,* 9 Cal.3d 687, 696 [108 Cal.Rptr. 809, 511 P.2d 1161], cert den. 414 U.S. 1113 [38 L.Ed.2d 740, 94 S.Ct. 844]; *People* v. *Zyduck,* 270 Cal.App.2d 334, 336 [75 Cal.Rptr. 616].)

The facts of *People* v. *Zyduck, supra,* are strikingly similar to the instant case. There Zyduck was a passenger in a car owned and driven by one Greaseback. On the rear seat of the car was a stolen chain saw. The court reversed Zyduck's conviction of receiving stolen property, on the ground that his dominion and control over the stolen saw was not established. Similarly in *People* v. *Martin, supra,* the Supreme Court reversed the conviction of the codefendant Prizant on one count of receiving stolen property, because the evidence failed to prove that Prizant had possession of stolen goods located in Martin's vehicle.

Under the circumstances the inability of appellant to tell Officer Barker the brand name or ownership of the television sets was consistent with his innocence. In the absence of proof that appellant possessed the television sets, he could not reasonably be expected to know that information. Officer Barker did not testify explicitly as to what statements, if any, were made by appellant. The officer testified only in a vague and general manner that "[t]hey couldn't give me the brand names or ownership of the televisions." Under these particular circumstances such testimony did not establish that appellant's statement was false, evasive or unsatisfactory.

### Count III

Appellant raises several contentions concerning count III: (1) that his statements at the scene of the initial detention were inadmissible in the absence of a warning of his *Miranda* rights;[3] (2) that the screwdriver and

---

[3]*Miranda* v. *Arizona,* 384 U.S. 436, 444 [16 L.Ed.2d 694, 706, 86 S.Ct. 1602, 10 A.L.R.3d 974].

knives were inadmissible as the products of an illegal pat-down search;[4] and (3) that his statements in the police car and after formal arrest were inadmissible as the fruit of the prior unlawful pat-down or of an illegal detention or arrest, and because he was not warned of his *Miranda* rights.[5] None of these contentions is meritorious.

■ Appellant was properly detained on the street for questioning without a prior warning of his *Miranda* rights. Upon observing appellant carrying a television set down the street at 8:30 p.m. in a high burglary neighborhood, Officer Williams was justified in stopping appellant and asking about the ownership of the set. Such questioning during a temporary detention for general on-the-scene investigation does not require a *Miranda* warning. (*People* v. *Manis,* 268 Cal.App.2d 653, 663-670 [74 Cal.Rptr. 423]; *Miranda* v. *Arizona, supra* at p. 477 [16 L.Ed.2d at p. 725].)

■ The pat-down search of appellant was proper. Officer Williams was aware that a high number of nighttime burglaries in the area had caused a special team of police to be assigned to the neighborhood. He was also aware that weapons had been taken in some of the burglaries in the area. Suspecting that appellant might possibly be a burglar, Officer Williams acted reasonably and properly in conducting a pat-down search for his own protection. It is reasonable for an officer to believe that a burglar may be armed with weapons, or tools such as knives and screwdrivers which could be used as weapons, and that a pat-down search is necessary for the officer's safety. (See *People* v. *Smith,* 30 Cal.App.3d 277, 279-280 [106 Cal.Rptr. 272].)

■ Appellant's statements in the police car were not the product of an illegal arrest. It is unnecessary to determine whether appellant was voluntarily in the vehicle, temporarily detained, or, as he contends,

---

[4]Although appellant's search and seizure contentions, which we determine to be without merit, were not raised by way of a motion prior to trial to suppress evidence pursuant to Penal Code section 1538.5, they were preserved for purposes of appeal by appellant's motion to strike testimony on search or seizure grounds at the preliminary hearing. (*People* v. *Triggs,* 8 Cal.3d 884, 887-888 fn. 2 [106 Cal.Rptr. 408, 506 P.2d 232]; *People* v. *Jenkins,* 13 Cal.3d 749, 753 fn. 4 [119 Cal.Rptr. 705, 532 P.2d 857].) Thus it is unnecessary to discuss appellant's additional contention that trial counsel's failure to make a section 1538.5 motion prior to trial constituted ineffective assistance of counsel. (See *People* v. *Martinez,* 14 Cal.3d 533, 538 [121 Cal.Rptr. 611, 535 P.2d 739]; *People* v. *Bradford,* 28 Cal.App.3d 695, 705-706 [104 Cal.Rptr. 852].)

[5]Appellant's objection at trial was on *Miranda* grounds. As to the search or seizure grounds, see footnote 4, *supra.*

effectively under arrest.[6] Even if such custody were viewed as an arrest, there was sufficient probable cause to justify it: Appellant was carrying a television set, which he admitted was not his, down the street at 8:30 p.m. in a high burglary neighborhood, carrying knives and a screwdriver commonly used as burglars' tools, and he looked in the direction of another man carrying a flight bag who fled at the sight of the police.

Nor were appellant's statements in the police car inadmissible because he was not warned of his *Miranda* rights. Appellant had stated during the initial detention that the television belonged to a friend who lived in the 1600 block of East 51st Street. Officer Williams asked appellant to get in the car and appellant indicated he would take them to this friend's house. As they approached the 1600 block of East 51st Street, appellant "changed his story, and indicated that this friend lived three blocks west from that location." As they approached the second location, appellant "changed his story again and said that the television belonged to an Eleanor McDowell, and she lived in the 1500 block of East 53rd. And he took us, directed us to her house."

Assuming that appellant was in custody within the meaning of *Miranda,* there is no showing whatsoever that appellant's statements were the result of custodial *interrogation.* Appellant was merely giving directions to a location, as he previously indicated he would. Officer Williams testified that the police asked appellant no questions during this period other than the location of the residence. In conversing with appellant as to the directions to the location, the police were not engaged in a process of interrogation that lent itself to eliciting incriminating statements. (*People* v. *Tarter,* 27 Cal.App.3d 935, 942 [104 Cal.Rptr. 271]. See also *People* v. *Terry,* 2 Cal.3d 362, 383 [85 Cal.Rptr. 409, 466 P.2d 961].) No *Miranda* warning was required.

Moreover, it is inferable from the record that as the police car approached the first location, and later the second, appellant spontaneously stated that the location of the residence was actually somewhere else. Nothing in *Miranda* prevents the admission of spontaneous statements of the accused. (*Miranda* v. *Arizona, supra,* 384 U.S. at p. 478 [16 L.Ed.2d at pp. 725-726]; *People* v. *Butler,* 12 Cal.App.3d 189, 192-193 [90 Cal.Rptr. 497].) There was no violation of *Miranda.*[7]

---

[6]Appellant was not formally arrested until after Officer Williams spoke to Eleanor McDowell at the third location indicated by appellant.

[7]Appellant's statements concerning the jacket he was carrying were made after the formal arrest and after advisement of rights.

## Conclusion

The judgment is reversed as to count II. In all other respects the judgment is affirmed.

Kaus, P. J., and Stephens, J., concurred.