THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ARNOLD SOLIS, Defendant-Appellant.
Second District   No. 84—0688

Opinion filed August 15, 1985.

G. Joseph Weller and Mary K. Schick, both of State Appellate Defender's Office, of Elgin, for appellant.

Robert J. Morrow, State's Attorney, of Geneva (Phyllis J. Perko and Judith M. Pietrucha, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HOPF delivered the opinion of the court:

After a bench trial in the circuit court of Kane County, the defendant, Arnold Solis, was found guilty of residential burglary (Ill. Rev. Stat. 1983, ch. 38, par. 19—3), and sentenced to seven years' imprisonment. The defendant appeals, contending that: (1) the police officer did not have reasonable articulable suspicion to effectuate the initial stop of the defendant and to frisk the defendant for weapons; and (2) the residential burglary statute is unconstitutional.

On the afternoon of March 8, 1984, police officers received a telephone call from a man named Roger Moore. Mr. Moore reported that

he had seen a man carrying a television set as he walked through several backyards. Moore reported that the suspect was a Mexican male, wearing blue jeans, a brown suede coat, and earphones. That description was radioed to other police officers. Moore testified that he watched the suspect place a set of headphones near a garage, then turn back in the direction from which he had come. When the suspect returned to the garage, he was carrying a television set. Moore then telephoned the police. After placing the call, Moore saw the man get into a car and pull away, leaving the television set near Moore's neighbor's garage. Moore flagged a passing squad car, identified himself as the caller, and gave police officer Studinarz the license plate number and a description of the car which the suspect had been seen driving from the scene. Officer Studinarz then radioed that additional information to the other police officers.

After receiving the first radio dispatch, Steven Wennmacher, a plainclothes officer, proceeded to the general area where the suspect had been spotted. As he approached the area, he received a second radio dispatch notifying him that the suspect had driven away in a tan Buick, license plate No. QJ 1409. Wennmacher knew this vehicle to be a vehicle belonging to the defendant. He observed the vehicle matching that description and followed the vehicle until it stopped in a driveway, at which point Wennmacher, who was in civilian clothes, parked his unmarked police car behind the vehicle. As defendant approached the police officer's car, the officer, who did not identify himself as a peace officer, asked defendant what he was doing and ordered him to place his hands on the hood of the police officer's car. The officer saw and removed a man's ring, which defendant was holding. At that point Officer Perez arrived and patted down the defendant, while Wennmacher removed a jack handle and a brown suede coat from defendant's automobile. Perez removed a remote control unit and some coins from defendant's pocket, and a police scanner from defendant's belt.

Defendant contends that because the police did not have reasonable articulable suspicion of criminal activity, the initial stop was not proper. Defendant further contends that since the police officers did not have reason to believe that the defendant was armed or dangerous, the frisk was unlawful. Defendant requests that the evidence seized as a result of the stop and frisk be suppressed as a product of the unlawful detention and search.

> "[I]n justifying the particular intrusion the police officer must
> be able to point to specific and articulable facts which, taken
> together with rational inferences from those facts, reasonably

warrant that intrusion." (*Terry v. Ohio* (1968), 392 U.S. 1, 21, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880.)

The constitutional rule established in *Terry v. Ohio* has been codified in section 107—14 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 107—14), which provides:

"A peace officer, after having identified himself as a peace officer, may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense as defined as Section 102—15 of this Code, and may demand the name and address of the person and an explanation of his actions. Such detention and temporary questioning will be conducted in the vicinity of where the person was stopped."

■ Defendant points out that the police officer who stopped the defendant did not identify himself as a peace officer. This would appear to bring this matter within the parameter of *People v. Vollrath* (1981), 95 Ill. App. 3d 866, 420 N.E.2d 760, *appeal denied* (1981), 85 Ill. 2d 573, wherein the appellate court affirmed the trial court's order to suppress based on the police officers' failure to identify themselves as police officers even though the officers were in uniform and had pulled up in a squad car. We do not condone police activity whereby a plainclothes officer in an unmarked police car would make a stop for the purpose of a stop and frisk without identifying himself as a peace officer. However, we believe the facts before the court in this matter are sufficiently unique, although in technical violation of section 107—14 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 107—14), to make the error, if any, not reversible. Here, there was ample evidence that the defendant recognized Officer Wennmacher and knew him to be working on a task program to stop criminals. There was further evidence that Officer Wennmacher was well acquainted with defendant due to past conduct and that he knew defendant was on parole. Under those circumstances we do not believe the error, if any, was sufficient to reverse.

■ The actions of the police officer, in ordering defendant to place his hands on the hood of the officer's car, and in conducting a pat down of defendant, were merely part of an investigatory stop. A police officer can order a person to halt, and can conduct a pat down with no preliminary questioning without turning an investigatory stop into an arrest. (*People v. Martin* (1984), 121 Ill. App. 3d 196, 206, 459 N.E.2d 279.) A police officer may rely on his own knowledge and experience, as well as reasonable inferences therefrom in investigating

possible criminal conduct. (*People v. Beacham* (1980), 87 Ill. App. 3d 457, 410 N.E.2d 87.) Here the police officer initiated the stop after he received a report that a man had been seen carrying headphones and a television set through a neighborhood. The man stopped by the police officer matched the description reported, and was stopped in a car matching the description and license plate number given by the dispatcher. Additionally, Officer Wennmacher testified that he knew defendant from prior encounters, knew that defendant was on parole for burglary, knew the license number and what kind of automobile the defendant drove, and was aware of several other burglaries that had recently been reported in that area, including one committed just two days before this incident. We find that there were specific and articulable facts stated by the officer which warranted the initial stop. See *People v. Vena* (1984), 122 Ill. App. 3d 154, 460 N.E.2d 886.

■ ■ The defendant suggests that even if the initial stop was proper, the police officer was not justified in conducting a pat down search since the radio report upon which the officer had relied in stopping defendant did not indicate that defendant was armed. An officer need not show that it was more probable than not that the person detained was armed. As long as there is a substantial possibility that the detained person possesses an instrument which could be used to commit bodily harm, a frisk for weapons is proper. (*People v. Kantowski* (1983), 98 Ill. 2d 75, 455 N.E.2d 1379.) The Illinois Supreme Court has noted that it is not unlikely that a person who is engaged in stealing another person's property might be armed, and a police officer need not risk his life by assuming the contrary. (*People v. McGowan* (1977), 69 Ill. 2d 73, 79, 370 N.E.2d 537, *cert. denied* (1978), 435 U.S. 975, 56 L. Ed. 2d 69, 98 S. Ct. 1624.) Accordingly, it was not improper for the police officers to frisk defendant for weapons, despite the fact that they had not received any information that the suspect was armed. For that reason, the television remote control unit, the coins, and the police scanner, items which were removed from defendant's person during the frisk, were not the fruits of an illegal search. Any items found during that search could be seized by the police officers. (*People v. Lee* (1971), 48 Ill. 2d 272, 269 N.E.2d 488.) We note that it is not clear whether the police scanner, removed from defendant's belt, was discovered during the pat down, or whether the officer saw the police scanner while conducting the pat-down search. If the police scanner was open to viewing by the police officer, it was not discovered pursuant to a search. Illinois cases have interpreted the word "search" to imply prying into hidden places, not observing what is open to public viewing. *People v. Martin* (1984), 121 Ill. App.

3d 196, 207, 459 N.E.2d 279, 287.

■■ The defendant does not specifically raise the issue of whether the officer's viewing of items in his automobile was proper. We note, however, that having determined that the detention was lawful, whether or not the viewing could be supported as a search incident to a lawful arrest, it was proper under the plain-view doctrine. *Texas v. Brown* (1983), 460 U.S. 730, 75 L. Ed. 2d 502, 103 S. Ct. 1535; *People v. Martin* (1984), 121 Ill. App. 3d 196, 459 N.E.2d 279.

A reviewing court has a duty to affirm the trial court's ruling on a motion to suppress unless that ruling is manifestly erroneous. (*People v. Grice* (1980), 87 Ill. App. 3d 718, 410 N.E.2d 209, *cert. denied* (1981), 450 U.S. 1003, 68 L. Ed. 2d 207, 101 S. Ct. 1714.) The trial court properly denied defendant's motion to suppress.

■■ ■ The defendant's second contention on appeal is that the residential burglary statute (Ill. Rev. Stat. 1983, ch. 38, par. 19—3) is unconstitutional because there is no meaningful distinction between it and the burglary statute (Ill. Rev. Stat. 1983, ch. 38, par. 19—1). The legislature has thereby prescribed a different penalty for the same conduct, according to defendant's argument. The defendant further challenges the mandatory minimum four-year sentence imposed for residential burglary as being disproportionate to the penalties prescribed for other Class 1 felonies. Specifically, he contends that aggravated kidnaping, not for ransom, and indecent liberties, both Class 1 felonies, are probational offenses, and there is no reason that the offense of residential burglary should be a nonprobational offense.

We have considered these same constitutional challenges in *People v. Sturlic* (1985), 130 Ill. App. 3d 120, 474 N.E.2d 1. We rejected these same arguments in that recent opinion, and we adhere to the reasoning and conclusions stated therein.

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

NASH, P.J., and STROUSE, J., concur.