Filed 2/11/14  P. v. Cael CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | A135248 |
| v. | (San Francisco County Super. Ct. No. 216808) |
| JEVON CAEL, | |
| Defendant and Appellant. | |
| _____/ | |

A jury convicted appellant Jevon Cael of two counts of unlawful possession of a firearm (former Pen. Code, § 12021, subd. (g)(2) & (c)(1) (Counts I and II)),[1] and contempt of court regarding a protective order (§ 166, subd. (c)(1) (Count III)).  At the sentencing hearing, the trial court placed appellant on probation and imposed, among other things, a $135 Criminal Justice Administration Fee pursuant to Government Code section 29550.2 (booking fee) and a $200 restitution fine pursuant to section 1202.4.  The minute order and probation order, however, reflect a $240 restitution fine.

On appeal, appellant contends: (1) the court erred by declining to give a pinpoint instruction on constructive possession of a firearm; (2) the court erred by imposing the

---

[1]     Unless otherwise noted, all further statutory references are to the Penal Code.

1

booking fee; and (3) the minute order and probation order should be modified to reflect the restitution fine the court orally imposed at the sentencing hearing.

We modify the sentencing minute order and probation order to impose a $200 restitution fine pursuant to section 1202.4. In all other respects, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Appellant is the father of two of Sara Thomas's children. A July 2011 protective order prevented appellant from coming within 100 yards of Thomas or her house. In October 2011, appellant spent a few nights at Thomas's house. Appellant and Thomas were not getting along and they avoided each other when they were at Thomas's house. On October 13, 2011, Thomas and appellant got into an argument. "For a brief second[,]" Thomas saw appellant with a small handgun and she felt threatened. On the evening of October 14, 2011, appellant slept in the children's bedroom at the front of the house; Thomas and the children slept in her bedroom. Thomas referred to the front bedroom as her children's room, but her children did not sleep there.

On the morning of October 15, 2011, appellant was sleeping in the front bedroom. Thomas called the police because she wanted appellant "out of [her] house" and because she was tired of not getting along with him. San Francisco police officers went to Thomas's home and found appellant sleeping in the front bedroom. Thomas told the officers there was a gun in the bedroom and allowed the officers to search it. They did and found a loaded gun under the mattress of the bed where appellant had been sleeping. After being *Mirandized*, appellant admitted he should not have been at Thomas's house and that he had a loaded "gun in the house . . . for protection."[2] He said he put the gun under his mattress before he went to sleep.

A jury convicted appellant of Counts I, II, and III. The court suspended imposition of sentence on Count II, stayed Counts I and III, and placed appellant on probation for three years. As a condition of probation, appellant was to spend one year in county jail, with credit for time served. At the sentencing hearing, the trial court imposed

---

[2] The court admitted a recording of the interview into evidence and the prosecutor played the recording for the jury.

various fines and fees, including the booking fee and a $200 restitution fine pursuant to section 1202.4. The court also imposed, but stayed, a $200 probation revocation restitution fine (§ 1202.44). Defense counsel did not object to the imposition of the fines and fees. The court ordered appellant to report to the Hall of Justice upon his release from custody to "make arrangements to pay your fine, penalties, and assessments. [¶] If you don't have any money, they work with you. But you have to go there anyway." The minute order and probation order reflect a $240 restitution fine.

DISCUSSION

I.

*The Court Did Not Err by Refusing the Proposed Pinpoint Instruction*
*and Any Error Was Harmless*

Appellant contends the erred by refusing a pinpoint instruction "defining constructive possession and explaining that mere proximity to contraband, such as a gun, does not establish possession of that item."

At trial, defense counsel requested the following pinpoint instruction "further defining possession" of the firearm alleged in Counts I and II: "There are two kinds of possession: actual possession and constructive possession. [¶] Actual possession requires that a person knowingly exercise direct physical control over a thing. [¶] Constructive possession does not require actual possession but does require that a person knowingly exercise control over or the right to control a thing, either directly or through another person or persons. [¶] One person may have possession alone, or two or more persons together may share actual or constructive possession. ***People v. Sifuentes*** (2011) 195 Cal.App.4th 1410. [¶] Constructive possession requires that a person knowingly exercised a right to control the prohibited item, either directly or through another person. Mere proximity to the weapon, standing alone, is not sufficient evidence of possession. [¶] ***People v. Zyduck*** (1969) 270 Cal.App.2d 334. [¶] Dominion and control are essentials of possession, and they cannot be inferred from mere presence or access. Something more must be shown to support inferring of these elements." The People objected to the proposed instruction.

3

The court refused the proposed pinpoint instruction. It explained judges are instructed to "use the CALCRIM instructions . . . unless there is some extraordinary reason not to . . . . The CALCRIM instructions adequately define possession." The court determined the proposed pinpoint instruction on possession did "not really add much, and it could likely confuse the jury, and it gives an unnecessary emphasis by having an extra instruction on possession to just one aspect of the element of those crimes."

The court instructed the jury with CALCRIM No. 2511, entitled "Possession of Firearm by Person Prohibited Due to Conviction[,]" which provided in relevant part: The defendant is charged in Count 2 with unlawfully possessing a firearm in violation of . . . section 12021(c)(l). [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant possessed a firearm; [¶] 2. The defendant knew that he possessed the firearm. . . . Two or more people may possess something at the same time. [¶] A person does not have to actually hold or touch something to possess it. It is enough if the person has control over it or the right to control it, either personally or through another person." The court also instructed the jury with CALCRIM No. 2512, "Possession of Firearm by Person Prohibited by Court Order," which provided in relevant part, "The defendant is charged in Count 1 with unlawfully possessing a firearm in violation of Penal Code section 12021(g)(2)" and contained identical language about possession.

"A trial court must instruct the jury, even without a request, on all general principles of law that are '"closely and openly connected to the facts and that are necessary for the jury's understanding of the case." [Citation.] In addition, "a defendant has a right to an instruction that pinpoints the theory of the defense. . . ."' [Citation.] The court may, however, 'properly refuse an instruction offered by the defendant if it incorrectly states the law, is argumentative, duplicative, or potentially confusing [citation], or if it is not supported by substantial evidence [citation].' [Citation.]" (*People v. Burney* (2009) 47 Cal.4th 203, 246.)

We conclude the court did not err by refusing the proposed pinpoint instruction. First, the court properly instructed the jury pursuant to CALCRIM Nos. 2511 and 2512

4

that "[a] person does not have to actually hold or touch something to possess it. It is enough if the person has control over it or the right to control it, either personally or through another person." For this reason, the proposed pinpoint instruction was duplicative. "A trial court is not required to give pinpoint instructions that merely duplicate other instructions." (*People v. Panah* (2005) 35 Cal.4th 395, 486.)

Assuming for the sake of argument the court's refusal to give the pinpoint instruction was erroneous, any error was harmless because the instructions sufficiently covered the topic of possession (*People v. Dieguez* (2001) 89 Cal.App.4th 266, 277) and because "it is not reasonably probable that had the jury been given [the] proposed pinpoint instruction, it would have come to any different conclusion in this case." (*People v. Earp* (1999) 20 Cal.4th 826, 887, citing *People v. Watson* (1956) 46 Cal.2d 818, 836-837.)

As discussed above, the court properly instructed the jury on the concepts of actual and constructive possession. Having received these instructions, "a reasonable juror would understand" these concepts. (*People v. Hughes* (2002) 27 Cal.4th 287, 363 (*Hughes*).) "Any lingering doubt that we could have concerning a reasonable juror's understanding of [possession] is dispelled by defense counsel's . . . closing argument" (*id.* at p. 363) which "focused the jury's attention" on the issue of possession (*People v. Hartsch* (2010) 49 Cal.4th 472, 504) and "'pinpointed' for the jury the defense theory" that appellant did not possess the gun. (*Hughes*, *supra,* 27 Cal.4th at p. 363.)

In closing argument, appellant's counsel argued appellant was "innocent of all the charges and of gun possession because he did not own, he did not possess, the gun that was found" at Thomas's home. Counsel claimed, "there's absolutely no evidence to show beyond a reasonable doubt that [appellant] possessed the gun" because he did not exert "dominion and control" over it. In addition, counsel explained that "[m]ere proximity to an item does not mean it's possession. Mere proximity of Mr. Cael to the gun, standing alone, is not sufficient evidence that he possessed it." In finding appellant guilty of prohibited possession of a firearm in violation of former section 12021, subdivisions (g)(2) and (c)(1), the jury rejected defense counsel's arguments based on

5

evidence that: (1) Thomas saw appellant with the gun; (2) the gun was found in the bed where appellant was sleeping; and (3) appellant admitted the gun was his and that he put it under the mattress of the bed where he slept. Appellant's arguments regarding prejudice are unpersuasive.

II.

*Appellant Forfeited His Challenge to the Booking Fee and Cannot*
*Establish Ineffective Assistance of Counsel*

Appellant argues the court erred by imposing a $135 booking fee pursuant to Government Code section 29550.2 without determining his ability to pay. Alternatively, he contends his counsel was ineffective for failing to object to the fee in the trial court. We conclude appellant forfeited his insufficient evidence claim by not objecting at sentencing (*People v. McCullough* (2013) 56 Cal.4th 589) and his ineffective assistance claim fails because he has not established prejudice.

To establish ineffective assistance of counsel, appellant must show: (1) trial counsel's representation fell below an objective standard of reasonableness; and (2) but for counsel's error, there is a reasonable probability he would have obtained a more favorable result. (*Strickland v. Washington* (1984) 466 U.S. 668, 688, 694.) Here, we need not determine whether counsel's performance was deficient because appellant has not established prejudice. (*Id.* at p. 697.) "''[If] the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal must be rejected.' [Citations.] A claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding. [Citations.]" (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267 (*Mendoza Tello*).)

Here, trial counsel was not asked to explain why she did not challenge the booking fee. Appellant seems to suggest that although the record is silent, this is a case in which there "simply could be no satisfactory explanation." (*Mendoza Tello, supra,* 15 Cal.4th at p. 266.) We disagree. The record demonstrates appellant, then 20 years old, had a

6

place to live and a standing job offer to work for Vector Marketing when he was released from custody. In addition, appellant's family supported him financially. This information suggests trial counsel could have determined appellant had the ability to pay the booking fee, and that an objection on the ground of inability to pay would have been futile. (*Mendoza Tello, supra,* 15 Cal.4th at p. 266.) "Ability to pay does not necessarily require existing employment or cash on hand" (*People v. Staley* (1992) 10 Cal.App.4th 782, 785) and the trial court may consider the defendant's ability to pay in the future. (*People v. Hennessey* (1995) 37 Cal.App.4th 1830, 1837.) In light of the minimal amount of the booking fee and the prospect of appellant's future earnings, we cannot fault defense counsel for not asserting that appellant was unable to pay the booking fee.

We also reject appellant's claim — based on *Southern Union Co. v. U.S.* (2012) ___ U.S. ___ [132 S.Ct. 2344] (*Southern Union*) — that he was entitled to a jury determination of his ability to pay and the amount incurred. In *Southern Union*, the Supreme Court held the Sixth Amendment right to a jury applies to "sentences of criminal fines." (*Id*. at p. 2349.) There, the violations at issue were punishable by, among other things, a fine of up to $50,000 per day of violation. A jury found Southern Union violated the law, but made no specific factual finding as to the number of days it was in violation. (*Ibid.*) The district court imposed an aggregate fine of $38.1 million, concluding from the "'content and context of the verdict all together' that the jury found a 762-day violation." (*Id.* at p. 2346.) The United States Supreme Court held the district court's factual finding as to the number of days Southern Union committed the crime violated Southern Union's Sixth Amendment right to a jury determination. (*Id*. at p. 2347.) In reaching its decision, the Supreme Court held that "[c]riminal fines, like . . . other forms of punishment, are penalties inflicted by the sovereign for the commission of offenses." (*Ibid.*)

*Southern Union* is distinguishable. Here, the booking fee is not a penalty "inflicted by the sovereign for the commission of offenses." (*Southern Union Co., supra,* 132 S.Ct. at p. 2347.) Rather, the fee imposed pursuant to Government Code section 29550.2 is administrative in nature, created to address a fiscal crisis in California "by

7

allowing a county to recover costs incurred in booking or otherwise processing an arrested person who thereafter is convicted." (*People v. Rivera* (1998) 65 Cal.App.4th 705, 707-708 (*Rivera*).) Government Code section 29550.2 fees are imposed "not as retribution for what the convicted criminal has done to a victim and/or to society, but for his or her use of jail services as a result of criminal behavior." (*Rivera, supra,* 65 Cal.App.4th at p. 711.) Moreover, Government Code section 29550.2 fees are limited to the actual costs incurred by the county. (*Rivera, supra,* 65 Cal.App.4th at p. 708.)

Thus, unlike the criminal penalties imposed in *Southern Union*, Government Code section 29550.2 fees are "assessed against all convicted offenders who have the ability to pay, without regard to the nature or severity of their respective offenses." (*Rivera, supra,* 65 Cal.App.4th at p. 708.) Accordingly, Government Code section 29550.2 fees are not a penalty inflicted for the commission of crimes. (*Rivera, supra,* at pp. 708, 711; see also *People v. Kramis* (2012) 209 Cal.App.4th 346, 352 [*Southern Union* did not affect the trial court's discretion to select an appropriate restitution fine, in part because, by imposing the mandated fees, "[t]he trial court did not make any factual findings that increased" the amount of the administrative fees, "beyond what the jury's verdict—the fact of the conviction—allowed"].) We conclude appellant was not entitled to a jury determination regarding his ability to pay the booking fee, or the amount of costs incurred by the county.

III.

*The Minute Order and Probation Order Must Be Corrected to Reflect the $200 Restitution Fine the Court Orally Imposed at the Sentencing Hearing*

At the sentencing hearing, the court imposed a $200 restitution fine (§ 1202.4). The clerk's minute order and the probation order however, reflect a $240 restitution fine. Appellant contends the minute and probation order should be corrected to reflect a $200 restitution fine and the People concede the issue. We accept the People's concession. "When there is a discrepancy between the minute order and the oral pronouncement of judgment, the oral pronouncement controls." (*People v. Gabriel* (2010) 189 Cal.App.4th 1070, 1073; *People v. Farell* (2002) 28 Cal.4th 381, 384, fn. 2.) As a result, the minute

8

order and probation order must be modified to reflect the $200 restitution fine orally imposed by the court.  (*People v. Mitchell* (2001) 26 Cal.4th 181, 185; *People v. Mesa* (1975) 14 Cal.3d 466, 471.)

## DISPOSITION

The judgment is modified to impose a $200 restitution fine under Penal Code section 1202.4.  The trial court is directed to prepare a new sentencing minute order and probation order, and, if appropriate, a new abstract of judgment and to forward the new abstract of judgment to the Department of Corrections and Rehabilitation.  As modified, the judgment is affirmed.

_____

Jones, P.J.

We concur:

_____

Needham, J.

_____

Bruiniers, J.

9